# In the United States Court of Federal Claims

No. 21-2261
(Filed Under Seal: April 11, 2022)
(Reissued for Publication: May 5, 2022)[1] [2]

*****************************************

|  |  |  |
|---|---|---|
| THALLE CONSTRUCTION CO., INC., | * |  |
|  | * |  |
| Plaintiff, | * |  |
|  | * |  |
| v. | * | Post-Award Bid Protest; Motion |
|  | * | for Judgment on the |
| THE UNITED STATES, | * | Administrative Record; Unequal |
|  | * | Treatment; Unstated Evaluation |
| Defendant, | * | Criteria; Clarifications; |
|  | * | Discussions; Prejudice; |
| and | * | Injunctive Relief. |
|  | * |  |
| PHILLIPS & JORDAN, LLC, | * |  |
|  | * |  |
| Defendant-Intervenor. | * |  |

*****************************************

*Jacob W. Scott*, Smith Currie & Hancock LLP, Washington, DC, counsel for Plaintiff. With whom were *Karl F. Dix* and *Lochlin B. Samples*, of counsel.

*Joshua A. Mandlebaum*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. *Amber R. Jackson*, Assistant District Counsel, U.S. Army Corps of Engineers, of counsel.

*Robert J. Symon*, Bradley Arant Boult Cummings LLP, Washington, DC, counsel for Defendant-Intervenor. With whom were *Patrick R. Quigley*, *Nathanial J. Greeson*, and *Sabah K. Petrov*, of counsel.

---

[1] This Order and Opinion was filed under seal on April 11, 2022, *see* ECF No. 36, in accordance with the Protective Order entered on December 8, 2021, *see* ECF No. 13. The parties were given an opportunity to identify protected information, including source selection information, proprietary information, and confidential information, for redaction. The Defendant filed a joint status report on April 25, 2022, with redactions proposed by each party. ECF No. 38. All redactions were unopposed. *Id.* at 2. The Court accepts all proposed redactions. All redactions have been blackened out. The Court has also corrected typographical errors.

[2] A public version of this Order and Opinion was filed on May 3, 2022. *See* ECF No. 39. The public version was subsequently sealed by the Court on May 5, 2022, after the Court was notified of an issue with the redaction method. This re-issued public version addresses the issue with the redaction method. No other changes have been made.

# ORDER AND OPINION

**DIETZ, Judge.**

Thalle Construction Company, Inc. ("Thalle") protests a decision by the U.S. Army Corps of Engineers ("Corps") to award a contract for canal construction to Phillips & Jordan, Inc. ("P&J"). Thalle challenges the Corps' assessment of several significant weaknesses and weaknesses against Thalle's proposal, as well as its assessment of several strengths to P&J's proposal. Thalle alleges that the Corps applied unstated evaluation criteria, failed to engage in clarifications, and treated Thalle's and P&J's evaluations unequally. Because the Court finds that the Corps' evaluation of Thalle's proposal was arbitrary and capricious, Plaintiff's motion for judgment on the administrative record is **GRANTED**. Defendant and Defendant-Intervenor's respective cross-motion are **DENIED**. The Corps is **ENJOINED** from proceeding with performance of the contract awarded to P&J until the Corps completes a reevaluation of Thalle's proposal consistent with this Opinion.

## I.    BACKGROUND

### A.    Overview of the Solicitation

The Corps issued Solicitation No. W912EP-21-R-0024 ("Solicitation") for the construction of a seepage canal and an inflow/outflow ("I/O") canal in the Everglades Agricultural Area, as part of the Central Everglades Planning Project in Palm Beach County, Florida. AR 2.[3] The Solicitation called for a Federal Acquisition Regulation ("FAR") Part 15 competitively negotiated source selection. *Id.* The Solicitation contemplated a firm-fixed price contract. AR 10. The Solicitation identified four evaluation factors: Technical Merit, Past Performance, Small Business Participation, and Price. AR 13. Technical Merit is the only evaluation factor at issue in this protest.

The Basis of Award section of the Solicitation stated that an "award will be made [to] the best overall (i.e., best value) proposal that is determined to be the most beneficial to the [g]overnment, with appropriate consideration given to the four evaluation factors." AR 13. The Contracting Officer was to evaluate proposals "us[ing] a trade-off process to determine which offer represents the best value to the [g]overnment."[4] *Id.* Additionally, the Solicitation provided that "[a]ll evaluation factors other than price, when combined, are approximately equal to price" for the purpose of the tradeoff analysis. *Id.* However, the Solicitation further provided that "[t]o receive consideration for award, a rating of no less than 'Acceptable' must be achieved for the Technical Merit [f]actor." *Id.*

The Solicitation stated that the objective of an offeror's response to the Technical Merit factor "should be to instill confidence that the offeror thoroughly understands the requirements of the [S]olicitation, [and] has the expertise and experience required to successfully satisfy or

---

[3] The Court cites to the Administrative Record, filed by the government at ECF No. 22 as "AR ___."

[4] The FAR establishes when a tradeoff process is appropriate and sets forth requirements for the conduct of a tradeoff process. *See* FAR 15.101-1.

exceed the [S]olicitation requirements within the required period of performance[.]" AR 14. The Solicitation instructed that "[t]he [g]overnment will not make assumptions concerning intent, capabilities, or experiences" and that "[c]lear identification of proposal details shall be the sole responsibility of the offeror." AR 14. Additionally, "[o]fferors should also identify potential risks and plans for mitigating those risks." AR 15.

The Technical Merit factor consisted of two elements—Technical Approach Plan and Construction Schedule. AR 13. The Technical Approach Plan element required offerors to describe the way they would "execute the work from start to completion." AR 15. This element specified minimum requirements for the Technical Approach Plan and stated that the proposed plan would be evaluated based on "the degree to which the offeror's proposal meets the requirements of the solicitation as well as the feasibility of the proposed approach." AR 15-16. The Construction Schedule element required the offeror to submit a schedule "showing the start and completion dates, interdependence, and other relative scheduling factors for all the items listed in Element 1 above." AR 16. Both elements stated that "[a]ny conflicts between Element 1 and Element 2 may be noted as a weakness." *Id.* However, the Solicitation explained that "[e]lements are not rated separately." AR 15. Each member of the Source Selection Evaluation Board ("SSEB") would individually rate each proposal against the Solicitation evaluation criteria, and "[a]n overall rating w[ould] be assigned for Factor 1 – Technical Merit" based on the SSEB reaching a consensus on an adjectival rating. AR 15-16. The five adjectival ratings available to the SSEB were Outstanding, Good, Acceptable, Marginal, and Unacceptable, as defined below. AR 17-18.

| Combined Technical/Risk Ratings | |
|---|---|
| **Adjectival Rating** | **Description** |
| Outstanding | Proposal meets requirements and indicates an exceptional approach and understanding of the requirements. Strengths far outweigh any weaknesses. Risk of unsuccessful performance is very low. |
| Good | Proposal meets requirements and indicates a thorough approach and understanding of the requirements. Proposal contains strengths which outweigh any weaknesses. Risk of unsuccessful performance is low. |
| Acceptable | Proposal meets requirements and indicates an adequate approach and understanding of the requirements. Strengths and weaknesses are offsetting or will have little to no impact on contract performance. Risk of unsuccessful performance is no worse than moderate. |
| Marginal | Proposal does not clearly meet requirements and has not demonstrated an adequate approach and understanding of the requirement. The proposal has one or more weaknesses which are not offset by strengths. Risk of unsuccessful performance is high. |
| Unacceptable | Proposal does not meet requirements and contains one or more deficiencies. Proposal is unawardable. |

*Id.* The assignment of an overall rating included "consideration of risk in conjunction with the strengths, weaknesses, significant weaknesses, uncertainties, and deficiencies" and "reflect[ed] the [g]overnment's confidence in each offeror's technical ability, as demonstrated in its proposal, to perform the requirements stated in the [Solicitation]." AR 17.

### B.    The Evaluation, Award Decision, and Protest

The Corps received five proposals, including those from Thalle and P&J. AR 3463, 3773. Of the proposals, only P&J's proposal received a Technical Merit rating of Acceptable or better. *See* AR 2141-68. Thalle and P&J received the following ratings:

| Offeror | Factor 1 Technical Merit | Factor 2 Past Performance | Factor 3 Small Business Participation | Factor 4 Price |
|---|---|---|---|---|
|  |  |  |  |  |
| Phillips & Jordan, Inc. | Outstanding | Satisfactory Confidence | Acceptable | $79,764,500.00 |
|  |  |  |  |  |
| Thalle Construction Co, Inc. | Marginal | Satisfactory Confidence | Acceptable |  |
| IGE |  |  |  |  |
| IGE+25% |  |  |  |  |

AR 2172. Thalle's Marginal rating on Technical Merit was based on the SSEB's assignment of no significant strengths, six strengths, five significant weaknesses, and seven weaknesses. *See* AR 2164-66.

The SSEB presented its findings to the Contracting Officer, who also served as the Source Selection Authority ("SSA") for this procurement. AR 2141-68. The SSA made the award decision without discussions "because only one awardable proposal was received, and that proposal was in the awardable price range." AR 2193. The SSA determined that P&J represented "the best value offer providing the highest rated Technical Merit with all other factors essentially being rated equal." *Id.* The SSA recognized that while "there were other offerors with pricing lower than [P&J], their price is still ▆▆▆▆▆▆ below the [Independent Government Estimate ("IGE")]." *Id.* P&J's price was deemed fair and reasonable based on adequate price competition and comparison to the IGE. *Id.*

Thalle filed its complaint in this Court on December 6, 2021, alleging that the Corps failed to evaluate Thalle's proposal in accordance with the Solicitation, failed to seek

clarifications, and treated offerors unequally. [5] Compl., ECF No. 1. The parties subsequently filed cross-motions for judgment on the administrative record, and oral argument was held on March 22, 2022. Thalle's protest is ripe for decision.

## II.     LEGAL STANDARDS

The Tucker Act grants this Court authority to render judgment on an action "by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b)(1) (2018). The Tucker Act's waiver of sovereign immunity "covers a broad range of potential disputes arising during the course of the procurement process" including objections to an award. *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380 (Fed. Cir. 2012). Accordingly, Thalle's challenge to the Corps' award of a contract to P&J is within this Court's subject-matter jurisdiction.[6]

Under Rule 52.1 of the Rules of the United States Court of Federal Claims, a party may file a motion for judgment on the administrative record to assess whether a federal administrative body acted in accordance with the legal standards governing the decision under review. *Agile Def., Inc. v. United States*, 143 Fed. Cl. 10, 17 (2019). This motion "is often an appropriate vehicle to scrutinize an agency's procurement actions because such cases typically involve interpretation of contract documents or regulations, thereby presenting no disputed issues of material fact." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1352 (Fed. Cir. 2004). On a motion for judgment on the administrative record, the parties are limited to the administrative record, and the court makes factual findings as if it were conducting a trial on the record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005). This Court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

This Court reviews agency decisions in bid protests using the standard of review set forth in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). This standard permits a court to set aside an agency's contracting decision if the protestor shows it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2018); *Bannum*, 404 F.3d at 1351. "Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency[] but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts." *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 105 Fed. Cl. 541, 559 (2012), *aff'd*, 720 F.3d 901 (Fed. Cir. 2013) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The protestor has the burden to show by a preponderance of evidence the arbitrary and capricious nature of the agency decision. *Mortg.*

---

[5] Thalle initially filed its protest at the Government Accountability Office ("GAO"). AR 2375-96. GAO dismissed Thalle's protest after Thalle opted to file a complaint in this Court. *See* AR 3639-41.

[6] None of the parties to this litigation challenge the Court's jurisdiction over this case or Thalle's standing to bring its protest. Nonetheless, the Court "has an obligation to satisfy itself that jurisdiction is proper[.]" *L-3 Commc'ns. Corp. v. United States*, 99 Fed. Cl. 283, 288 (2011) (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 130 (2010)).

*Contracting Servs., LLC v. United States*, 153 Fed. Cl. 89, 124 (2021). While the APA standard calls for considerable deference to the agency, *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010), a court may set aside an agency's procurement decision if the decision lacked a rational basis, or the procurement procedure involved a violation of regulation or procedure. *Impresa*, 238 F.3d at 1332; *see also Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1343 (Fed. Cir. 2021). Nevertheless, if the reviewing court finds that the agency's action evinced rational reasoning and consideration of relevant factors, it must sustain the agency's action. *Advanced Data Concepts*, 216 F.3d at 1058 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974)).

An agency decision is arbitrary and capricious when it results from unequal treatment of the offerors. *See CliniComp Int'l Inc., v. United States*, 117 Fed. Cl. 722, 742 (2014) (stating "[U]nequal treatment is fundamentally arbitrary and capricious, and violates . . . full and open competition[.]"). A claim of unequal treatment is derived from the FAR requirement that "[a]ll contractors and prospective contractors shall be treated fairly and impartially but need not be treated the same." FAR 1.102-2(c)(3). An offeror is treated unequally when "the agency unreasonably downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly identical from those contained in other proposals." *Office Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020). If a protestor demonstrates that the relevant proposals were substantively indistinguishable, a reviewing court may compare and analyze "the agency's treatment of proposals without interfering with the agency's broad discretion in these matters." *Id.*

An agency decision is also arbitrary and capricious if the decision is a product of the agency's application of unstated evaluation criteria. *See NVE, Inc. v. United States*, 121 Fed. Cl. 169, 180 (2015) (stating that an offeror can challenge an agency's analysis as "arbitrary, capricious, or an abuse of discretion" when the agency relies on unstated evaluation criteria). A claim that an agency relied upon unstated evaluation criteria in the evaluation of a proposal is based on instruction in the FAR that "[a]n agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the Solicitation." FAR 15.305(a). To succeed on an unstated evaluation criteria claim, "a protester must show that: (i) the procuring agency used a significantly different basis in evaluating the proposals than was disclosed; and (ii) the protestor was prejudiced as a result—or, in other words, that it had a substantial chance to receive the contract award but for that error." *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 387 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004).

## III.   DISCUSSION

In its protest, Thalle argues that the Corps performed an arbitrary and capricious proposal evaluation because it treated Thalle's proposal unequally, applied unstated evaluation criteria, and failed to seek clarifications. Thalle specifically challenges the Corps' assessment of five significant weaknesses and seven weaknesses to its proposal, as well as its failure to assess three strengths to its proposal. But for the Corps' faulty evaluation, Thalle asserts that its proposal would have received a higher Technical Merit rating, been subject to a best-value tradeoff analysis, and, because of its lower price, ultimately been selected for contract award. Based on the administrative record, the Court finds that the Corps' assessment of two significant

6

weaknesses and two weaknesses against Thalle's proposal was arbitrary and capricious. The Court also finds that the Corps' failure to assess one strength to Thalle's proposal was arbitrary and capricious.

      **A.**      **The Corps' assessment of two significant weaknesses and two weaknesses and its failure to assess one strength to Thalle's proposal was arbitrary and capricious.**

              1.      The Corps' assessment of a significant weakness because Thalle identified two different subcontractors to perform blasting <u>was not</u> arbitrary or capricious.

The Corps assessed a significant weakness to Thalle's proposal because it "identifie[d] two different subcontractors to perform drilling & blasting (███████████████████ ███████████████████)." AR 2164. The Solicitation provided that "a letter of commitment must be provided for any proposed major subcontractor for . . . rock blasting." AR 928. A major subcontractor is defined as "any subcontractor whose experience is submitted as part of the proposal." *Id.* The Solicitation also required that offerors "demonstrate that [it] and/or [its] major subcontractors have experience . . . successfully performing blasting operations." AR 18.

Thalle included letters of commitment from ███████████████ as blasting subcontractors in its proposal. AR 1288-90. In the blasting narrative portion of its proposal, Thalle referred only to ███████████ as its blasting subcontractor. *See* AR 1301 ("Thalle will be partners with ███████████"). In contrast, Thalle referred only to █████ to demonstrate its blasting experience. AR 1349-57 (█████ blasting experience). In its evaluation, the Corps explained that this discrepancy makes it "unclear who [Thalle] intends to use and therefore conflicts with the project blasting plan." AR 2164.

Thalle argues that "the Solicitation did not prohibit offerors from providing letters of commitment from multiple subcontractors for the same work." Pl.'s Mem. in Supp. of Mot. for J. on Admin. R. at 29, ECF No. 23-1 [hereinafter Pl.'s Mem.]. This argument is not persuasive. The record shows that the Corps assessed this significant weakness, not simply because Thalle submitted two letters of commitment from different subcontractors, but because it is unclear from Thalle's proposal which subcontractor would be used for blasting. AR 2164. The Court agrees that Thalle's proposal is unclear. Thalle's submission of the two letters of commitment, combined with its use of ███████████ in its blasting narrative and reliance on █████ for its past performance, creates an ambiguity in the proposal. It is not the Corps' obligation to resolve such ambiguity. *See* AR 14 ("The [g]overnment will not make assumptions concerning intent, capabilities, or experiences . . . . Clear identification of proposal details shall be the sole responsibility of the offeror"). Considering the importance of blasting subcontractors to the overall project and the Corps' stated requirement to demonstrate experience performing successful blasting operations, the Corps reasonably viewed this ambiguity as a concern and assigned a significant weakness to Thalle's proposal for its perceived increased risk of unsuccessful performance. AR 17, 2164.

2.      The Corps' assessment of a significant weakness for Thalle's proposed
equipment resources <u>was not</u> arbitrary or capricious.

The Corps assessed another significant weakness because the equipment resources included in Thalle's proposal "are unclear for loading and hauling[.]" AR 2164. The Solicitation required that offerors "[p]rovide typical production rates for all listed equipment planned to be utilized to blast, excavate, remove, transport, crush, process, place, and stockpile material." AR 15. In the planned equipment portion of Thalle's proposal, it states that Thalle will use '█████ ████████████.' AR 1296. It further explains that:

> Thalle will utilize ██████████████████ include ███████ ███████ and ████████████████, with each canal having a ███████ for cleanup. This equipment spread will maintain ███ [cubic yards ("CY")] per hour, which in combination will maintain ██████ CY per hour, or ██████ CY per shift. This production rate ████████████████████████████████████████████ █████████████████████████████████████.

AR 1297. The Corps assessed a significant weakness, explaining that "[Thalle] states ████ ████████████████; however, ██████ CY per hour is ████ CY short of ██████ CY and it is unknown if [Thalle] intends to use ████ independent spreads or ████." [7], [8] AR 2164. The Corps further explained that "[i]f [it is] ████, [then] it does not appear to be enough production resources to meet the schedule." *Id.*

The Court agrees that Thalle's proposal is unclear mathematically. Thalle proposed to use ███████████ per canal, each with ████████████ and additional equipment. Thalle's proposal stated that each "*equipment spread* will maintain [a rate of] ████ CY per hour." AR 1297 (emphasis added). At that rate, three spreads would be required to equal Thalle's proposed total production rate of ████ CY per hour. Thalle's proposed equipment usage thus falls short of its proposed total production rate. Even if the Corps understood Thalle's proposed individual rate to apply to each *excavator* rather than each *equipment spread* (which is notably different from the language in the proposal), as Thalle now argues it intended, there would still be a mathematical discrepancy. Four excavators operating at Thalle's proposed individual rate would result in a total rate of ████ CY per hour. Thalle now explains that it arrived at ████ CY per hour by applying a ████ productivity rate to account for downtime. Pl.'s Mem. at 30. This explanation, however, is not contained anywhere in Thalle's proposal, and the Corps is not obligated to make assumptions regarding Thalle's intentions with respect to its proposed equipment spreads. *See* AR 14. Without a clear explanation, it was reasonable for the Corps to assess a significant weakness to Thalle's proposal because Thalle's proposed means and methods for completing the project did not provide the Corps with confidence in its ability to successfully complete the project on schedule. *See* AR 16.

---

[7] The government explains that the Corps "made a typographical error here, using 346 instead of ████." Def.'s Reply at 13 n.4, ECF No. 28. This apparent administrative error is not pertinent to Thalle's challenge.

[8] The Court denotes that "*" stands for multiplication.

      3.      The Corps' assessment of a significant weakness because Thalle's
              proposal failed to discuss ███████████████ the necessary permits
              <u>was not</u> arbitrary or capricious.

The Corps assessed a significant weakness to Thalle's proposal because "[Thalle] discusses following NPDES & FDEP permits . . . however [it] does not discuss ███████ ███████ the necessary permits." [9] AR 2164. The Solicitation required offerors to "[p]rovide a detailed description of the proposed plan to manage surface and groundwater within the limits of construction." AR 15. Under the permits portion of the Solicitation, offerors were specifically required to "[o]btain NPDES Stormwater Construction Generic Permit to provide coverage under [NPDES]." AR 733. Thalle argues that the assessment of this significant weakness was arbitrary because the Corps unequally treated its proposal and employed unstated evaluation criteria. Pl.'s Mem. at 22-23, 28.

Thalle argues that the Corps treated its proposal unequally because P&J was assessed a significant strength and Thalle was assessed a significant weakness for what amounts to the same proposal content regarding permits. Pl.'s Mem. at 22-23. The Corps assessed a significant strength to P&J's proposal because it stated that P&J would ████████████████ ███████████████████. AR 1067 ("███████████████████████████████████ ████████████████████████████████████."); AR 2155. On the other hand, Thalle's proposal received a significant weakness because it stated only that it would ███████████████████████. *See* AR 1305 ("████████████████████ ████████████████████████████████████████."); AR 2164. Thalle argues that its proposed permitting approach is substantively indistinguishable from P&J's proposed approach. *See* Pl.'s Mem. at 22-23.

However, a comparison of Thalle's and P&J's respective proposals does not show unequal treatment by the Corps. As part of its approach for managing surface and groundwater, P&J's proposal explicitly addressed the need to acquire "████████████████████████████ ████████████████████████████." AR 1067. Further, P&J's proposal stated that it would ███████████████████████████████████████ ████████." AR 1048 ("████████████████████████████████████ ████████."). P&J explained that it has "██████████████████████████ ████████████████████████████████████." *Id.* P&J's more detailed description of ████████ ████████████████ is distinguishable from Thalle's proposal, which merely stated that it would ████████████████ and did not clearly acknowledge ██████████ ████████████████████████████████████. *See Intuitive Rsch. & Tech. Corp. v. United States*, 157 Fed. Cl. 1, 7 (2021). Based on these differences, the Corps acted reasonably when it assessed a significant weakness to Thalle's proposal and a significant strength to P&J's proposal.

---

[9] "NPDES" is short for the National Pollution Discharge Elimination System. *See* AR 732. The NPDES "is designed to prevent harmful discharges into the Nation's waters" and generally "requires dischargers to obtain permits that place limits on the type and quantity of pollutants that can be released into the Nation's waters." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 608 (D. Md. 2011) (internal citations & quotations omitted). "FDEP" refers to the Florida Department of Environmental Protection.

Additionally, the Corps did not employ unstated evaluation criteria when it assessed a significant weakness to Thalle's proposal for its failure to include a "specific narrative describing the ███████████████████████." Pl.'s Mem. at 28. The Solicitation specifically required that offerors provide a detailed description of their plan to manage surface and groundwater. AR 15. An explanation of ██████████████████████████████████████████████████████████████ is intrinsic in the Solicitation requirement to provide a detailed description of the proposed plan for managing surface and groundwater. *See Banknote Corp.*, 56 Fed. Cl. at 387 ("[I]t is well-settled that a solicitation need not identify each element to be considered by the agency during the course of the evaluation where such element is intrinsic to the stated factors.") (quotations omitted). The Corps determined the lack of detail regarding permitting requirements in Thalle's proposal created increased risk to contract performance. *See* AR 2164-65. The Corps did not use a significantly different basis for evaluating Thalle's proposal than what was stated in the Solicitation. Based on the record, Thalle's unstated evaluation criteria argument amounts to a mere disagreement with the Corps' proposal evaluation results. *See Avtel Servs., Inc. v. United States*, 70 Fed. Cl. 173, 218 (2006) ("[A] protestor's mere disagreement with the agency's evaluation determination does not provide a basis for sustaining the protest.") (quotations omitted).

> 4.    The Corps' assessment of two significant weaknesses because Thalle's proposal included ███████████████████████ and did not account for the ██████████████ in its construction schedule was arbitrary and capricious.

Thalle's proposal was assessed two significant weaknesses stemming from its proposed use of an ██████████████. *See* AR 2165-66. The Solicitation required that an offeror's proposed Technical Approach Plan "[p]rovide a detailed explanation of how the offeror will ensure quality control, including a description of proposed quality control measures." AR 15. The Solicitation permitted offerors "to procure the services of a Corps of Engineers' approved testing laboratory or establish an approved testing laboratory at the project site." AR 702. The purpose of the laboratory is to "perform specified or required tests to verify that control measures are adequate." *Id.* An on-site laboratory must meet certain inspection validation requirements. *See* AR 702-03. Additionally, an offeror cannot begin work that requires testing until the offeror's ██████████ has been "inspected, Corps validated[,] and approved by the Contracting Officer." AR 791.

In its evaluation of Thalle's proposal, the Corps acknowledged that "[t]he contract allows an option to utilize an off-site laboratory or establish an on-site laboratory" but then assessed a significant weakness for Thalle's proposed use of ██████████████████ because "[t]he laboratory testing required for the project does not readily justify such efforts and no explanation as to why the offeror's would risk schedule and expend additional resources and time to warrant ███████████████████████ is present within the proposal." AR 2165. The Corps assessed a related weakness because Thalle's construction schedule "does not consider the ██████████████████████████." AR 2165. Thalle argues that the Corps' assessment of these significant weaknesses constituted unequal treatment because the Corps did not assess similar weaknesses to P&J's proposed use of an ██████████████. Pl.'s Mem. at 21-22.

Thalle's proposal stated that a "████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████." AR 1310. P&J's proposal stated that a "USACE Validated
Construction materials testing lab will be ████████, during construction for materials testing
services as required in the contract documents." AR 1069-70. The government argues that
"[P&J's] laboratory plan is distinguishable from Thalle's because [P&J] will use a████████
██ while Thalle will "████████████████████████████████." Def.'s Reply at 2 (emphasis
in original). However, the government's argument is not supported by the contents of P&J's
proposal. Nowhere in P&J's proposal does it state that ████████████████ proposed by P&J is
████████. It's proposal simply states that it will
████████████████." *See* AR 1069. Based on this record, P&J's proposed ████████████████
████████████████████████ by the Corps in accordance with
████████████ set forth in the Solicitation. *See* AR 791. This is not substantively distinguishable
from Thalle's proposed ████████████████████████████, which will be
subject to the same ████████████████ contained in the Solicitation. Therefore, the Corps
treated Thalle's proposal unequally when it assessed a significant weakness against Thalle's
proposal and did not assess the same weakness to P&J's proposal. If the Corps determined that
████████████████ was unwarranted for this project, resulted in unnecessary
schedule risk, and thus warranted assessment of a significant weakness, the Corps should have
applied this determination equally to both Thalle's and P&J's respective proposals.[10]

The Court also finds that the Corps unequally treated Thalle's proposal when it assessed a
significant weakness to Thalle's proposal because its "schedule does not consider the
████████████████ [Quality Control] and [Quality Assurance] laboratory." AR 2165. The
Solicitation required that "[a]ll work items listed in the Technical Approach Plan should be
included in the Construction Schedule and the timeframes given for work items in the
Construction Schedule." AR 16. It also stated that any conflicts between the technical approach
and construction schedule may be noted as a weakness. *Id*. The issue here, however, is that
neither Thalle's, nor P&J's, construction schedules list ████████████████ laboratory,
so both technical approaches contain inconsistencies with the respective construction schedules.
*See* AR 1076-93, 1321. P&J argues that ████████ lab was "accounted for in P&J's
schedule in . . . Contractor Quality Control (CQC) plan, Environmental Protection Plan, and
Mobilize & Set up Office Trailers." Def.-Intervenor's Mot. for J. on the Admin. R. at 27 (citing
AR 1076, 1078)., ECF No. 25 However, the record does not support P&J's assertion. P&J's
schedule does not contain a line item for ████████████ laboratory, nor does it make
clear that the broader schedule line items for quality control include the necessary time for
████████████████. *See generally* AR 1076-93. Based on the record before
the Corps, the Court does not find a rational basis for the Corps' assessment of a significant

---

[10] Thalle also argues that the Corps employed unstated evaluation criteria because "[n]othing in the [S]olicitation
required, or even suggested, that Thalle needed to justify its ████████" or "to justify the schedule and cost
components of ████████████[.]" Pl.'s Mem. at 27; Pl.'s Reply at 7, ECF No. 26. The Court does not address
this argument because the Court finds that the Corps' assessment of a significant weakness for Thalle's proposed use
████████████████ was based on unequal treatment.

weakness to Thalle's proposal for this schedule deficiency without a corresponding significant weakness to P&J's proposal.[11]

       5.     The Corps' assessment of a weakness because Thalle's proposal contained larger muck estimates than expected under the Solicitation <u>was not</u> arbitrary or capricious.

The Corps assessed a weakness to Thalle's proposal because it "estimates muck to be ███ CY per acre, which equates to a ███ thick layer of muck, which is thicker than the expectation set by the contract (0.6" to 2 ft thick) and provides no basis for the assumption within the proposal (i.e., local experience)." AR 2165. The Solicitation requires that offerors "[p]rovide typical production rates for all listed equipment planned to be utilized to . . . excavate . . . material." AR 15. Thalle states in its proposal that "[b]y utilizing a combination of t███ ███ and ████████████ to push and [withdraw] the material, and ██████████████] to load ███ haul trucks on each canal, Thalle expects to maintain ███ CY per hour during demucking and grubbing operations" and "[w]ith an estimated 360 Acres to clear and demuck, this is an average of ███ CY per AC." AR 1297. The Corps determined that Thalle's planned production rates exceeded the expected muck thickness and that the lack of an explanation relating planned production rates to expected project conditions demonstrated that Thalle was unfamiliar with the project specifications. *See* AR 2165.

Thalle challenges this weakness as arbitrary stating that "[w]hether the volume of muck is greater than what the Corps estimated . . . [has] no impact on Thalle's schedule, cost to the government, or risk of performance, since Thalle is prepared to move significantly more muck than set forth in the Solicitation." Pl.'s Mem. at 24. Thalle also alleges unequal treatment because the Corps assessed P&J's proposal with a strength on the basis that P&J "anticipates and has a plan for dealing with deeper muck & marl pockets that are not obvious on boring logs present within the Geotechnical Data Report." Pl.'s Mem. at 24-25; AR 2156.

The Court finds that the Corps had a reasonable basis to question Thalle's understanding of the project conditions and assess a weakness to Thalle's proposal due to its lack of detail. *See* AR 14 ("Clear identification of proposal details shall be the sole responsibility of the offeror[.]"); *see also Harmonia Holdings Grp., LLC v. United States*, 152 Fed. Cl. 97, 107 (2021) (finding a weakness for a contractor emphasizing work that is not important to the solicitated project could present a risk because it can show the contractor does not understand the work). Thalle's proposal for excavating and handling muck is distinguishable from P&J's proposal. AR 2156. P&J's proposal explicitly addresses the expected project conditions by stating that "[m]uck thickness for most of the project varies between 6 to 18 inches across the site" and "[d]eeper pockets of muck of up to 4 feet in thickness have been identified." AR 1052. P&J's proposal further explains that "[o]n similar projects, P&J has encountered various depressions and voids

---

[11] The Corps assessed a weakness to Thalle's proposal for its "over-simplified" schedule and did not assess a corresponding weakness to P&J's proposal. *See* AR 2166. For the reasons discussed below, the Court determined that this was reasonable because P&J's schedule is significantly more detailed than Thalle's schedule. *Compare* AR 1076-93 (P&J's Schedule) *with* AR 1321 (Thalle's Schedule). However, this does not affect the Court's conclusion with respect to how the Corps treated the offerors' respective schedules with regarding the use ██████████ ████████.

within the cap rock where excessive muck and marl collects. These pits can prove to be difficult, however our experience has prepared our crews to efficiently mitigate these deposits with the following approach." AR 1052. This level of detail does not appear in Thalle's proposal. *See* AR 1297. Therefore, while the Corps assessed a weakness to Thalle's proposal for its lack of detail around its planned production rates, the Corps assessed a strength to P&J's proposal because of P&J's detailed plan. *See* AR 1051-52 (P&J's proposed muck handling plan). Thus, the Corps did not unequally treat Thalle's proposal, and it had a reasonable basis to conclude that P&J's more detailed plan for excavating and handling muck "[i]nstills confidence that the offeror has a clear understanding of the site conditions and reduces the projects risk to differing site condition (DSC) claims." AR 2156; *see Office Design Grp.*, 951 F.3d at 1372-73.

> 6.    The Corps' assessment of a weakness for Thalle's failure to provide sufficient detail on how it would overcome potential obstacles <u>was</u> arbitrary and capricious.

The Corps assessed a weakness to Thalle's proposal because the potential obstacles to construction that Thalle listed in its proposal did "not provide sufficient detail to instill confidence" in Thalle's ability "to overcome the obstacles in the anticipated construction environment." AR 2165. The Solicitation required that offerors "[i]dentify possible obstacles to construction operations and how the offeror will overcome these obstacles." AR 15. Thalle identified two obstacles: "███████████████████████████" and "███████ ███████." AR 1312. Thalle also proposed plans to overcome these identified obstacles. *See id.* In its evaluation, the Corps acknowledged the two obstacles identified by Thalle but determined that Thalle's proposal was lacking sufficient detail on its ability "to overcome the obstacles in the anticipated construction environment." AR 2165. Thalle challenges this weakness arguing that it is based on unstated evaluation criteria because "the Solicitation did not require offerors to identify any specific potential obstacles to construction." Pl.'s Mem. at 30.

The Court finds that, while the Corps did not employ unstated evaluation criteria, its evaluation does not contain a rational basis for its assessment of a weakness to Thalle's proposal. The Corps assessed Thalle's proposal against the explicit Solicitation requirement to identify obstacles and provide a mitigation plan and therefore did not apply a significantly different basis in evaluating Thalle's proposal than was disclosed in the Solicitation. However, the Corps' evaluation provides no basis for the assessment of a weakness aside from the conclusory statement that Thalle's list of potential obstacles "does not instill confidence" in Thalle's ability to overcome the "obstacles in the anticipated construction environment." AR 2165. This merely restates the evaluation method set forth in the Solicitation without any explanation regarding the basis for the weakness. AR 14. For instance, it is unclear from the Corps' evaluation whether the Corps assessed the weakness because Thalle's mitigation plans for the identified obstacles lacked detail or because Thalle failed to identify other potential obstacles in the anticipated construction environment. Accordingly, the Corps has not provided a satisfactory explanation for assessing this weakness. *See State Farm*, 463 U.S. at 43 ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (quotations omitted).

7.      The Corps' assessment of a weakness because Thalle's "███████ ██████" <u>was</u> arbitrary and capricious.

Thalle's proposal was assessed a weakness because the Corps determined that it "contains conflicting information" in the proposed schedule narrative and construction schedule. AR 2165. According to the Corps, the "Construction Schedule Activity Timeframe narrative states using a ███████████████ to the Seepage and I/O Canals for Blasting and excavation, [and] the schedule has them starting ████████████[.]" AR 2165. Thalle argues that the Corps arbitrarily assessed this weakness because its proposal does not contain conflicting information, and the Corps "failed to give Thalle credit for information in its proposal that clearly met the requirements[.]" Pl.'s Mem. at 31.

The Solicitation required that offerors "[p]rovide [the] basis for timeframes for required work items proposed in . . . [the] Construction Schedule, including all assumed contingencies (i.e. adverse weather, mechanical shut-down, environmental issues, additional permits[,] etc.)." AR 15. The Solicitation also stated that "[a]ny conflicts between Element 1 [Technical Approach Plan] and Element 2 [Construction Schedule] may be noted as a weakness." AR 16.

Contrary to the Corps' explanation, the Court finds that the narrative in Thalle's technical approach plan does not conflict with its proposed construction schedule. Thalle's construction schedule narrative clearly states that "[b]lasting and excavation will █████████ with both canals." AR 1313 (emphasis added). This is also reflected in Thalle's construction schedule, which shows that blasting and excavation ████████████████ for each canal. *See* AR 1321. For both the I/O canal and seepage canal, Thalle explained in its narrative that "██████████████████████████████████████." *Id.* Thalle further explained for both canals that by ██████████████████████ ████████." *Id.* The reference to "████████████" clearly refers to the ████████ █████████ on each canal, rather than between canals. The Corps' evaluation ignores that Thalle's proposal calls for ██████████ blasting and excavating of the I/O and seepage canals and that this ████████ activity is also consistent with Thalle's proposed construction schedule. Therefore, the Corps assessment of a weakness because of conflicting information in Thalle's proposal is not supported by the record. *See Ala. Aircraft Indus.*, 586 F.3d at 1375 (highlighting an agency's action is arbitrary and capricious when the agency "offer[s] an explanation for its decision that runs counter to the evidence before the agency") (quotation marks omitted) (quoting *State Farm,* 463 U.S. at 43).

8.      The Corps' assessment of a weakness for the lack of detail in Thalle's construction schedule <u>was not</u> arbitrary or capricious.

Thalle received a weakness because the Corps determined that its proposed construction schedule was "oversimplified and lack[ed] appropriate detail to ██████████." AR 2166. The Solicitation requires that offerors provide a schedule of construction "showing the start and completion dates, interdependence, and other relative scheduling factors for all of the items of work listed in the [Technical Approach Plan]." AR 16. The Solicitation lists twelve activities that the schedule must contain. *Id.* Thalle argues that the Corps applied unstated evaluation criteria

because "the [S]olicitation required only that a proposed schedule show[] the start and finish dates and schedule logic" for the minimum schedule requirements contained in the Solicitation. Pl.'s Mem. at 27; AR 16. Thalle argues that it met this requirement and, therefore, should not have been assessed a weakness. Pl.'s Mem. at 28.

The Court is not persuaded by Thalle's argument that the Corps employed unstated evaluation criteria in assessing this weakness. The Corps assessed a weakness because Thalle's schedule, while otherwise meeting the minimum schedule requirements, lacked sufficient detail for the Corps to ▮▮▮▮▮▮▮▮▮▮. AR 2166. The Solicitation stated that the evaluation method for the construction schedule would assess "the degree to which the offeror's proposal meets the requirements of the Solicitation as well as the feasibility of the proposed approach." AR 16. It further explained that the list of activities was provided as an example and "is not the only corroboration that will be made between the Technical Approach Plan and Construction Schedule." *Id.* Accordingly, a construction schedule that meets or moderately exceeds the example requirements does not preclude the assignment of a weakness, and the Corps may reasonably determine the degree to which the proposed schedule supports the feasibility of the proposed approach. *See Lockheed Missiles & Space Co., Inc. v. Bentsen*, 4 F.3d 955, 959 (Fed. Cir. 1993) ("[A]gencies are entrusted with a good deal of discretion in determining which bid is the most advantageous to the [g]overnment.") (quotations omitted). The offeror "carries the burden of presenting an adequately written proposal, and an offeror's mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably." *Westech Int'l., Inc. v. United States*, 79 Fed. Cl. 272, 296 (2007) (quotations omitted). Thalle's proposed schedule consisted of one page, and based on the Corps evaluation, its level of detail did not allow the Corps to ▮▮▮▮▮▮▮▮▮▮. AR 1321. The Court cannot fault the Corps for assessing a weakness to Thalle's construction schedule based on the Solicitation requirements and evaluation method.

9.    The Corps' assessment of a weakness because Thalle included only one ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in its planned equipment <u>was not</u> arbitrary or capricious.

The Corps assessed a weakness to Thalle's and P&J's respective proposals because each "proposed only [a] single ▮▮▮▮▮▮▮▮▮▮▮▮▮ as planned equipment." AR 2165, 2156. Thalle argues that "the Corps offset the weakness in P&J's proposal . . . because elsewhere P&J indicated that it would use more than one ▮▮▮▮▮" and "the Corps did not afford Thalle the same attention even though Thalle's proposal also explained it would use a second ▮▮▮▮▮." Pl.'s Reply at 14.

The Court is not persuaded by Thalle's argument. Both Thalle's and P&J's proposed equipment lists include only one ▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* AR 1045-46, 1296-97. The Corps viewed this as a risk and thus assessed a weakness to both Thalle's and P&J's proposals. AR 2156, 2165. Though both offeror's equipment lists included only one ▮▮▮▮▮, both proposals contained references to the potential use of more than one ▮▮▮▮▮. *See* AR 1064 (P&J states that it "would anticipate using two more of these ▮▮▮▮▮▮▮▮▮▮ for this project."); AR 1299 (Thalle states that "a second ▮▮▮▮▮ will be utilized depending on availability."). On this basis, the Corps assessed a strength to P&J's proposal because P&J "noted the use of multiple ▮▮▮▮

███████ for this project, though only one was included in the list of equipment." AR 2156. The Corps also separately assessed a strength to Thalle's proposal on the basis that it "noted it would . . . bring additional equipment to the project to maintain production." AR 2164. The Court finds that Thalle and P&J were not treated unequally because both offerors received the same treatment for the same weakness, both proposals contained a similar inconsistency, and both received a similar corresponding strength that arguably offset the respective weakness.

      10.    The Corps' assessment of a weakness because Thalle's proposal failed to address the need to ████████████████ was not arbitrary or capricious.

The Corps assessed a weakness to Thalle's proposal because Thalle "does not acknowledge the need to ███████████████ due to their disproportional quantity of excavation per 530 [linear foot ("LF")]." AR 2165. Thalle argues that this weakness was arbitrary because the Solicitation did not include a requirement to ████████████ and that its "proposal clearly explained how it would maintain an excavation rate of 530 [Linear Feet] per week on each canal" and "did not require ███████████████████" to complete the project on schedule. Pl.'s Mem. at 30.

The Court is not persuaded by Thalle's argument. The Solicitation requires that offerors provide production rates for equipment planned to be utilized to excavate the canals. AR 15. The evaluation method assesses the degree to which the offeror's proposal meets the Solicitation requirements, as well as the feasibility of the proposed approach. AR 16. The feasibility of the proposed approach will measure how well the proposed means and methods provide the government with confidence of successful project completion within the contract schedule. *Id.*

Thalle's proposed approach involves ███████████████ ██████████. AR 1297, 1313. The construction drawings contained in the Solicitation provide that the canals have differing quantities of material requiring excavation. AR 980-82. Based on Thalle's proposed ██████ approach and the differing requirements between canals, it was reasonable for the Corps to conclude that Thalle may need to ████ to complete the project on schedule since the canal with the greater quantity of material may require more resources than the canal with lesser material. Because Thalle's proposal failed to address this apparent risk in its approach, the Corps had a rational basis for assessing a weakness because the method for blasting and excavating the canals described in Thalle's proposal did not provide the Corps with confidence that Thalle would successfully complete the project in a timely manner. *See* AR 16.

      11.    The Corps' assessment of a weakness because Thalle's proposed daily production rate was unclear was not arbitrary or capricious.

The Corps also assessed a weakness against Thalle's proposal because Thalle's planned production rate "████████████████████████████." AR 2165. The planned production rate in Thalle's proposal provided "████ CY per hour, or ████ CY per shift." AR 1297. Thalle's proposal then explained that "[t]his production rate provides for ████████████████████████

16

████████████████████████████████████ but not exceed the 530 feet per week allowed." *Id.* The Corps derived the "████████████" by ████████████████████████████. *See* AR 1297, 2165. The Corps apparently viewed this production rate as a weakness because it does not account for ████████ ████████. Thalle challenges this conclusion by the Corps as arbitrary because it alleges that the Corps "ignore[ed] clearly presented information." Pl.'s Mem. at 29. In its briefing, Thalle explains that it accounted for ████████ because ████████████████████████████████████ ████████████████." *Id.* at 30. Thalle further elaborates that ████████████████████████ ████████████████████████████████████████." *Id.*

For the same reason discussed above with respect to Thalle's proposed equipment spreads, *see supra* Section III.A.2, the Court finds that Thalle's proposed daily production rate is not clear, and the Corps was reasonable to assess this weakness. Thalle does not indicate anywhere in its proposal that its planned production rates represent only ████ of its maximum production rate. Without this necessary clarifying information, it was not unreasonable for the Corps to interpret Thalle's proposal as proposing ████████████████████ and conclude that ████████████████████████████████████. *See* AR 14 ("The [g]overnment will not make assumptions concerning intent [and] capabilities . . ."); *see also Structural Assocs., Inc./Comfort Sys. USA (Syracuse) Joint Venture v. United States*, 89 Fed. Cl. 735, 744 (2009) ("An offeror has the responsibility to submit a well-written proposal with adequately detailed information that allows for a meaningful review by the procuring agency.") (quoting *CACI Techs., Inc.*, B-296946, 2005 CPD ¶ 198 at 5 (Comp. Gen. Oct. 27, 2005)).

    12.    The Corps' failure to assess a strength to Thalle's proposal for its use of ████ <u>was</u> arbitrary and capricious.

Thalle argues that the Corps unequally treated its proposal by assigning three strengths to P&J's proposal for proposal elements that Thalle alleges are substantively indistinguishable from its proposal. Pl.'s Mem. at 23-24, 26. First, P&J's proposal was assessed a strength because it "provided significant detail along with means and methods for the ████████████████" which "included graphics of ████████████" along with ████████████." AR 2156. Thalle claims that its proposed ████████████ "included information and graphics nearly identical [to] those the Corps praised in P&J's proposal" and thus Thalle should have likewise been assessed a strength. Pl.'s Mem. at 23. While the government concedes that Thalle's ████████ diagram, AR 1302-04, is "very similar" to P&J's ████████████, AR 1108-10, the government argues that the similarities end there. Def.'s Mot. for J. on the Admin. R. at 12, ECF No. 24. The government explains that P&J's ████████████ provides more detail, including ████████. *Id.*; AR 1065-66; *see also* AR 1056-57, 1059-60. The Court agrees with the government that Thalle's and P&J's proposed ████████████ are not substantively indistinguishable. Thalle's plan consists of only a single page, and, while it may contain identical features to P&J's plan, it lacks the same level of detail. The Corps was not arbitrary in crediting P&J's plan with a strength for its overall more detailed plan and electing to not assign a strength to Thalle's plan. *See Office Design*, 951 F.3d at 1372-73; *Intuitive Rsch.*, 157 Fed. Cl. at 7.

Second, the Corps assessed a strength to P&J's proposal because P&J "████████ ████████████████████████████████████." AR 2155. Thalle argues unequal treatment on the grounds that it "proposed to ████████████████████████ yet received no recognition from the Corps." Pl.'s Mem. at 26; AR 1296 (Thalle's proposal stating that "████████████████████████████████████████████████████████████ ████████████████████████████████████████████████."). These proposal features, however, are not substantively indistinguishable. An ████████████████ ████████████████████████████, is not the same as a ████████████████████. Therefore, the Corps rationally assessed a strength to P&J's proposal for its ██████ while not similarly recognizing Thalle's ████████████. *See Office Design*, 951 F.3d at 1372-73; *Alpine Companies, Inc. v. Untied States*, 156 Fed. Cl. 681, 689-90 (2021); *Vantage Assocs., Inc. v. United States*, 59 Fed. Cl. 1, 19 (2003) ("The wide discretion afforded contracting officers extends to a broad range of procurement functions, including the determination of what constitutes an advantage over those proposals.").

Third, the Corps assessed a strength to P&J's proposal because P&J "indicates that all equipment will use ████████████████████████████████████████ ████████." AR 2156. Thalle claims that its proposal also indicates use of "██████████" equipment, but the Corps ignored the benefit." Pl.'s Mem. at 26. The Court agrees with Thalle that the Corps unequally treated Thalle's proposal when it assigned a strength to P&J for the use of ████████████████ and did not assign a strength to Thalle for its proposed ████████. P&J's proposal references ████ ████████ in multiple places, but these references are largely redundant and boil down to P&J using ████████████████. *See, e.g.*, AR 1057 ("████████████████ ████████"); AR 1060 (same quote); AR 1058 ("████████████ is essential, as this excavation will be ████████████."); AR 1060 (same quote); AR 1072 ("Utilize ████████ ████████"). Thalle's proposal also references ████████████████████████. AR 1311 (stating that all work will be ████████████████████."). While the references ████████ are different in quantity and utilize different terminology, the proposed use of ████████████████████ to ensure quality control and compliance with contract requirements is substantively indistinguishable. Accordingly, if the Corps viewed ████████ as a strength, it should have assessed a strength to Thalle's proposal similar to that assessed to P&J's proposal.

### B.    The Corps was not required to engage in clarifications or discussions.

Thalle argues that the Corps was required to engage in clarifications and discussions to allow Thalle to fix the defects in its proposal. *See* Pl.'s Mem. at 32-34; Pl.'s Reply at 21-22. Clarifications are "limited exchanges" that the government may use to allow offerors "the opportunity to clarify certain aspects of their proposals . . .  or to resolve minor or clerical errors." FAR 15.306(a) (1-2). Clarifications may not be used to "cure proposal deficiencies or material omissions, materially alter the technical or cost elements of the proposal, or otherwise revise the proposal." *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 998 (Fed. Cir. 2018). The Contracting Officer has the discretion to decide whether to seek clarifications. *Safeguard Base Operations*, 989 F.3d at 1346. A contracting officer abuses that discretion if they "should have discerned that the protester made an error rather than a deliberate decision." *Criterion Sys.*,

*Inc. v. United States*, 140 Fed. Cl. 29, 37 (2018) (articulating that "the obviousness of the error is an important aspect of determining whether the [agency] acted reasonably by not seeking clarification"). Different from clarifications, discussions "are exchanges . . . between the [g]overnment and offerors, that are undertaken with the intent of allowing the offeror to revise its proposal." FAR 15.306(d). The decision to engage in discussions is also within the contracting officer's discretion. *Chenega Healthcare Servs., LLC v. United States*, 138 Fed Cl. 644, 654 (2018); *see also Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1327-28 (Fed. Cir. 2011).

Thalle argues that the Corps was required to seek clarifications before assessing a significant weakness because of its inclusion of the commitment letters for two separate blasting subcontractors. Pl.'s Mem. at 33-34. The Court disagrees because Thalle's inclusion of two blasting subcontractors in its proposal is not an obvious clerical error that would require the Corps to seek clarifications. Thalle submitted letters of commitment for both ████████████ and ███████, which caused confusion on which subcontractor would perform the blasting work. AR 1288-90, 2165. This confusion was exacerbated because Thalle mentioned only ██████████ in its proposed blasting plan yet it utilizes only █████ to demonstrate its blasting experience. *See* AR 1301, 1349-57. This lack of clarity with respect to its blasting subcontractors appears to result from a deliberate decision to use different blasting subcontractors to satisfy different proposal requirements, as opposed to a clerical error. Accordingly, the Corps did not act arbitrarily when it did not seek clarifications from Thalle. *Criterion Sys.*, 140 Fed. Cl. at 37.

Thalle also argues that clarifications were required with respect to the weaknesses assigned by the Corps for Thalle's proposed equipment spreads and daily production rate. Pl.'s Mem. at 33-34. The Court disagrees because the weaknesses assessed against these two areas of Thalle's proposal do not arise from obvious clerical errors and instead are based on a lack of clarity in Thalle's proposed technical approach. Further, the record supports that the Corps would have needed new information regarding Thalle's proposed approach to effectively remedy the lack of clarity. For instance, in order to remedy the lack of clarity around Thalle's proposed equipment spreads, Thalle would need to insert the rationale that it offers in its briefing, that "████ CY per hour rate was ████ of this rate to account for inefficiencies, downtime, and other nonproductive time." Pl.'s Mem. at 29-30. Similarly, Thalle would need to explain that its proposed daily production rate of ████ CY per shift is ████ of the maximum rate. Pl.'s Mem. at 30. Clarifications are not to be used for supplementing a proposed technical approach with new information. *See PAE Aviation & Tech. Servs., LLC v. United States*, 156 Fed. Cl. 454, 465 (2021). Accordingly, the Corps did not act arbitrarily when it did not seek clarifications from Thalle about its proposed equipment spreads and daily production rate. *See Dell Fed.*, 906 F.3d at 998; s*ee also Criterion Sys.*, 140 Fed. Cl. at 37.

With respect to discussions, the Corps did not act arbitrarily or abuse its discretion by not conducting discussions. The contracting officer has discretion not to open discussions when the solicitation provides notice to offerors that the government intends to award without discussions. *See Chenega*, 138 Fed. Cl. at 654 ("[T]he overwhelming weight of authority indicates that a contracting officer's discretion to not open discussions generally trumps a protestor's argument that the agency should have opened discussions to rehabilitate unsatisfactory proposals before making a best value contract award."); *Allied Tech. Grp.*, 649 F.3d at 1327-28; *see also* FAR

15.306(a)(3) ("Award may be made without discussions if the [S]olicitation states that the [g]overnment intends to evaluate proposals and make award without discussions."). In this case, the Solicitation notified offerors that "[t]he [g]overnment intends to evaluate proposals and award a contract *without discussions*" so "the offeror's initial proposal should contain the offeror's best terms from a price and technical standpoint." AR 14 (emphasis added).

Despite the well-established discretion afforded to contracting officers to determine whether to open discussions, Thalle, citing *DynCorp Int'l LLC v. United States*, 76 Fed. Cl. 528, 540 (2007), argues that an agency's decision to not engage in discussions is only reasonable after "an affirmative determination that discussions could not improve the protestor's proposal enough to make its proposal competitive." Pl.'s Reply at 21. Thalle claims that the Corps decision to not engage in discussions was unreasonable because the Corps did not affirmatively state in its Source Selection Decision that discussions would not improve Thalle's proposal enough to make it awardable. *See* Pl.'s Reply at 21–22. This understanding of *DynCorp* is misplaced. Indeed, the court in *DynCorp* acknowledged an affirmative determination by the agency that discussions were unlikely to change the best value determination. However, the court's decision was based on deference afforded to the agency's discretionary determination to not conduct discussions. *See DynCorp*, 76 Fed. Cl. at 540 ("The court defers to the Air Force's discretion whether or not to hold discussions [thus] . . . [t]he Air Force's decision not to hold discussions, even here where only two proposals were received, was within the discretion afforded a procuring agency."). The Court is unaware of any binding precedent, and Thalle has not provided any, that requires an agency to make an affirmative determination that discussions would not improve a deficient proposal enough to make such proposal eligible for consideration for award, especially when, as in the present case, the agency informed the offerors in the solicitation of its intention to make an award without discussions. Accordingly, the Court defers to the Corps' discretion to not open discussions in this case.

### C. Thalle was prejudiced by the Corps' arbitrary and capricious evaluation of its proposal.

Having found that the Corps acted arbitrarily and capriciously, the Court now considers whether Thalle was prejudiced by the Corps' errors. *See Bannum*, 404 F.3d at 1351 (stating that once a court finds that an agency acted arbitrarily, the court "proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct"). For Thalle to prevail, it "must show prejudicial error." *Glenn Def. Marine (Asia), PTE, Ltd. v. United States*, 720 F.3d 901, 908 (Fed. Cir. 2013). There is no presumption of prejudice upon a showing that an agency acted irrationally. *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021). To establish prejudice, Thalle must show that "but for the alleged error, there was a substantial chance that [it] would receive an award—that it was within the zone of active consideration." *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1326 (Fed. Cir. 2011) (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996)).

In this case, Thalle has demonstrated that it has been prejudiced by the Corps' errors. In sum, the Corps assessed Thalle's proposal with five significant weaknesses, seven weaknesses, and six strengths. AR 2164-66. On this basis, the Corps assigned Thalle's proposal a Technical Merit rating of "Marginal" because its "proposal contains nearly as many significant weaknesses

20

as it does strengths" and because the "risk of unsuccessful performance is high." AR 2189. Because Thalle's proposal was assigned a "Marginal" rating, it was not considered for award, and the contract was awarded to P&J without conducting a trade-off analysis. *See* AR 2193.

The Court has now concluded that two of the significant weaknesses and two of the weaknesses were assessed arbitrarily by the Corps. *See supra* Section III.A. Additionally, the Court has concluded that the Corps arbitrarily did not assess an additional strength to Thalle's proposal. *Id*. While a revised count of strengths and weaknesses based on the Court's findings may not result in offsetting strengths and weaknesses, the Solicitation does not necessarily require a proposal to have offsetting strengths and weaknesses in order for it to be assigned a Technical Merit rating of "Acceptable." *See* AR 17. The Solicitation defines an "Acceptable" proposal as one where the "[s]trengths and weaknesses are offsetting *or will have little to no impact on contract performance*." *Id*. (emphasis added). Therefore, it is possible for Thalle to be assigned an improved technical merit rating of "Acceptable" based on a revised count of strengths and weaknesses and thus be considered for award. With price being equal to all of the other evaluation factors combined and Thalle's proposed price being significantly less than P&J's, Thalle has a substantial chance of being determined to be the best-value in a tradeoff analysis. While the Court finds that Thalle has met its burden of demonstrating prejudice, the determination of whether Thalle's revised combination of strengths and weaknesses "will have little to no impact on contract performance" is properly left to the Corps' discretion. *See FirstLine Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359, 397 (2011) (stating that the assignment of technical ratings is a matter that is "within the broad discretion of the procuring agency") (citing *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996)).

### D.    Thalle is entitled to injunctive relief.

The Tucker Act empowers the Court to "award any relief that the court considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2). When determining whether to grant a permanent injunction, the Court must consider: (1) whether the protestor has succeeded on the merits; (2) whether the protestor will suffer irreparable harm without injunctive relief; (3) the balance of hardships to the respective parties; and (4) the public interest. *Centech Grp. Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004)). Thalle has succeeded on the merits, so the Court must now consider whether Thalle will suffer irreparable harm, whether the balance of hardships favors granting the injunction, and whether the public interest is served by the injunction.

The Court finds that Thalle is entitled to injunctive relief because Thalle has succeeded on the merits of its claim and the remaining injunctive relief factors weigh in favor granting such relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citing *PGBA*, 389 F.3d at 1228-29). First, Thalle will suffer irreparable harm without injunctive relief because there is no adequate alternative remedy for its lost opportunity to fairly compete for the contract. *See Insight Sys. Corp. v. United States*, 110 Fed. Cl. 564, 582 (2013) (highlighting "[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the

absence of an injunction") (alteration in original); *Sys. Studies & Simulation, Inc. v. United States*, 146 Fed. Cl. 186, 203 (2019) ("The United States Court of Federal Claims has repeatedly held that a protester suffers irreparable harm if it is deprived of the opportunity to compete fairly for a contract.") (citing cases). Second, the balance of hardships weighs in Thalle's favor. Neither the government nor P&J allege how they will be harmed if Thalle is granted injunctive relief. Additionally, even though an injunction would result in a delay to the Corps' project, only in exceptional circumstances would delay alone justify denial of injunctive relief. *See Sys. Studies*, 146 Fed. Cl. at 203 (stating "only in an exceptional case would [delay] alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests") (alterations in original). Finally, the public interest weighs in Thalle's favor because "the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid." *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 663 (2003); *see also Ernst & Young, LLP v. United States*, 136 Fed. Cl. 475, 519 (2018). Since all four factors weigh in Thalle's favor, Thalle is entitled to its requested injunctive relief.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the administrative record is **GRANTED**. Both the Defendant and Defendant-Intervenor's respective cross-motions are **DENIED**. Thalle is entitled to injunctive relief. Specifically, the Court **ENJOINS** the Corps from proceeding with performance of the contract awarded to P&J pursuant to the Solicitation. The Court **ORDERS** the Corps to reevaluate the proposals in a manner that redresses the errors identified in this Opinion. The Clerk is **DIRECTED** to enter judgment accordingly.

Some information contained in this Opinion may be considered protected information subject to the Protective Order entered on December 8, 2021. Accordingly, the Opinion is filed **UNDER SEAL**. The parties **SHALL CONFER** and **FILE** on or before **April 25, 2022**, a joint status report that: identifies the information, if any, that the parties contend should be redacted; explains the basis for each proposed redaction; and includes an attachment of the proposed redactions for this Opinion.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge